IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| GUPREET SINGH BAJWA, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | 1:23-cv-277 (LMB) |
| ) | 1:20-cr-60 (LMB) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

MEMORANDUM OPINION

Before the Court is Gurpreet Singh Bajwa's ("Bajwa" or "movant") pro se Motion to Vacate brought under § 2255(f)(3)[1] [Dkt. No. 73], in which he argues that his conviction for violating 21 U.S.C. § 841(a)(1) should be vacated pursuant to recent Supreme Court precedent in Ruan v. United States, which held that when the government prosecutes a medical doctor for violating 21 U.S.C. § 841(a) it "must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner." 142 S. Ct. 2370, 2375 (2022). For the reasons stated below, Bajwa's Motion to Vacate will be dismissed.

I. BACKGROUND

A. Procedural History

On March 4, 2020, Bajwa, who was represented by retained counsel, waived indictment and under a written Plea Agreement, entered guilty pleas to a six-count criminal information, charging him with five counts of unlawful distribution of Adderall and one count of unlawful distribution of Oxycodone, all in violation of 21 U.S.C. § 841(a)(1). [Dkt. No. 29].

---

[1] Bajwa also requested that counsel be appointed to assist him, but the Court denied his request on March 3, 2023, explaining that the right to counsel does not apply to post-conviction motions. See [Dkt. No. 74].

On June 19, 2020, Bajwa was sentenced to 120 months' imprisonment, concurrent on each count, followed by three years of supervised release, and he was ordered to pay a $30,000 fine and $600 special assessment. [Dkt. No. 58]. Despite the appeal waiver in his Plea Agreement, he appealed his conviction and sentence, arguing that "the district court erred in permitting certain testimony at sentencing." [Dkt. No. 68] at 2. The Court of Appeals for the Fourth Circuit dismissed the appeal finding that the plea was valid "because he entered it knowingly and intelligently," and that as part of Bajwa's Plea Agreement he "waived the right to appeal his conviction and [] sentence within the statutory maximum." Id. The court also found no plain error in Bajwa's Rule 11 hearing. Id. at 3.

Bajwa timely filed the pending Motion to Vacate to which the government has filed an opposition and Bajwa has filed a reply. Finding that oral argument will not assist the decisional process, the Motion to Vacate will be resolved on the pleadings and case record.

**B. Factual Background**

According to the stipulated Statement of Facts, which is part of his written Plea Agreement, Bajwa admitted that from 2005 until November 2018, he was a primary care physician operating a family medicine practice located in Fairfax, Virginia, and because of his valid licensure, he was authorized to prescribe, administer, and dispense Schedule II, III, IV, and V controlled substances if they were "issued for a legitimate medical purpose" and "in the usual course of his professional practice." [Dkt. No. 33] ¶ 1, 2; 21 C.F.R. § 1306.04(a). From January 2017 through October 2018, movant issued more than 700 prescriptions for controlled substances each month, which included unauthorized prescriptions that were "knowingly or intentionally" issued to unlawfully "distribute or dispense" Adderall and oxycodone in violation of 21 U.S.C. § 841(a)(1). Id. ¶ 4.

During his March 4, 2020 Rule 11 hearing, Bajwa, under the penalty of perjury, "promised to tell the truth in answering all of the Court's questions," explained that he had a medical degree, spoke English fluently, had no health issues that could interfere with a knowing and voluntary plea, and was not under the influence or alcohol of illegal drugs. [Dkt. No. 65] at 2. He confirmed that he had read the Plea Agreement, fully understood every part of it and "carefully reviewed every part of it with [his] attorney." Id. at 10.

After going through the terms of the Plea Agreement with Bajwa, the Court asked him whether he understood that if he chose to plead not guilty, the government would have the burden of proving him guilty beyond a reasonable doubt, which required proof that he "knowingly, intentionally, and unlawfully, and to do something knowingly and intentionally means you did it not by an accident or mistake or other innocent reason," dispensed or caused to be distributed or distributed Adderall and oxycodone "by writing prescriptions" that "were outside the usual course of professional practice and without a legitimate medical purpose." Id. at 25-26. Bajwa responded, "Yes, [y]our Honor." Id.

The Court next turned to the stipulated Statement of Facts, which Bajwa acknowledged was "part of the plea agreement itself." Id. at 30. After Bajwa confirmed that he "in fact, signed the statement of facts," and that he had "read it over for [him]self word for word" before signing it, the Court asked, "[D]o you understand that by signing the statement of facts, you have done two things? First, you are admitting to the truth of everything in the 38 numbered paragraphs." Id. at 30-31. Bajwa responded, "Yes, [y]our Honor." Id. at 31. The Court continued, "[S]econdly, you are also admitting that if the case had gone to trial, the government could have proven all of those facts beyond a reasonable doubt. Do you understand that?" Id. Bajwa, again, said "[y]es." Id.

3

Importantly, the Court asked, "Do you agree with the description that in each of these cases, when these people came in to get the medication, that you had not performed the thorough type of medical examination, blood tests, etc., that is normally part of a doctor's practice?" Id. at 32. Bajwa responded, "Yes, [y]our Honor." Id. When asked whether he claimed "whatsoever that [he was] innocent of any of these six counts," he responded, "No, [y]our Honor." Id. at 32. After hearing all of defendant's answers, the Court found Bajwa guilty of all six counts. Id. at 33.

The stipulated Statement of Facts, which was "incorporated into the plea agreement" and signed by Bajwa, clearly established that he knowingly and voluntarily issued prescriptions, which he knew he was prescribing for no legitimate medical purpose and outside the course of ordinary professional practice. Specifically, he acknowledged that as early as 2005, he knew that when prescribing controlled substances, he was required to abide by 21 C.F.R. § 1306.04(a). [Dkt. No. 33] at 1. Moreover, in 2012, he was put on notice of the professional requirement to issue prescriptions only for a legitimate medical purpose when the Virginia Department of Health Professions suspended his medical license for two months following an investigation into his improper prescription practices related to pain medications, including oxycodone. Id. ¶ 3. After his license was reinstated, Bajwa reduced the quantity of pain medications he prescribed but increased the quantity of stimulants, benzodiazepines, and sedatives that he prescribed. Id.

Bajwa admitted that, between January 2017 through October 2018, he "knowingly and deliberately" issued prescriptions for Adderall to five patients and prescriptions for oxycodone to another patient "for no legitimate medical purpose, and outside the course of ordinary professional practice, within the meaning of 21 U.S.C. § 841(a)(1) and 21 C.F.R. § 1306.04(a)." Id. ¶¶ 35, 37. For example, Bajwa admitted that at no point did he physically examine these patients before knowingly issuing them prescriptions for controlled substances. In fact, he even

4

told an undercover officer (UC-1) to lie to the pharmacy to get his Adderall prescription filled early, and he continuously refilled patient N.J.'s prescription despite knowing that N.J. was using the prescriptions to "get high." Id. ¶¶ 8, 34.

## II. DISCUSSION

In his Motion to Vacate, Bajwa argues that his March 4, 2020 plea was not valid because "the government failed to prove [] Bajwa knowingly or intentionally acted in an unauthorized manner," and he was not properly informed that, if he had gone to trial, the government would have been required to prove the same beyond a reasonable doubt as required by Ruan. [Dkt. No. 76] at 2. The government opposes the Motion to Vacate first by arguing that, although at the time of Bajwa's conviction this circuit had held that, unlike in Ruan, whether a doctor's actions were authorized was an objective inquiry, Bajwa cannot now bring a Motion to Vacate because he cannot show cause and actual prejudice or actual innocence to permit review of his procedurally defaulted claim. [Dkt. No. 75] at 6. Even if not defaulted, the government argues that Bajwa repeatedly admitted to "knowingly and intentionally" issuing unauthorized prescriptions which he knew were outside the usual course of medical practice and without a legitimate medical purpose, which is the mens rea required by Ruan. Id. at 11.

### A. Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner may collaterally attack his sentence on the grounds that: "(1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack." Cameron v. United States, No. 06-cr-343, 2008 WL 1984254, *1 (E.D. Va. May 5, 2008) (citing Hill v. United States, 368 U.S. 424, 426-27 (1962)).

5

The doctrine of procedural default "bars the consideration of a claim that was not raised at the appropriate time during the original proceedings or on appeal." Hurdle v. United States, 2007 WL 1555779, at *2 (E.D. Va. May 22, 2007). A court may nevertheless consider procedurally defaulted habeas claims if a movant shows "either cause and actual prejudice or that he is actually innocent." United States v. McKinney, 60 F.4th 188, 193 (4th Cir. 2023). To demonstrate cause and actual prejudice on collateral review, a movant must show "some objective factor external to the defense prevented counsel from raising the claim on direct appeal" and that it is likely that "had [movant] known of the error," he "would not have pled guilty." Id. at 193-94, 196. To establish actual innocence, a movant must make "a stronger showing than that needed to establish prejudice," and he must establish that, considering all the evidence available, "it is more likely than not that no reasonable juror would have convicted him of any charge." Schlup v. Delo, 513 U.S. 298, 327 (1995).

**B. Analysis**

The parties concede that Bajwa's claim is procedurally defaulted because he did not raise his argument during the original proceedings or on appeal, but they disagree about whether Bajwa has established cause and actual prejudice or actual innocence, either of which would permit the Court to consider his procedurally defaulted habeas claim. Beginning with actual prejudice, in considering "the record of prior proceedings" in this case, United States v. White, 366 F.3d 291, 297 (4th Cir. 2004), Bajwa's claim that he would not have pleaded guilty had he understood the government's burden of proof in light of Ruan fails because, unlike the defendants in Ruan who at no point voluntarily admitted that they knowingly issued unauthorized prescriptions, Bajwa's admissions during the Rule 11 hearing and in the stipulated Statement of Facts establish that he knowingly and intentionally issued prescriptions which he knew were unauthorized in violation of § 841(a)(1).

6

First, at his Rule 11 hearing, the Court was presented with a "mature, well-educated, financially successful defendant" who confirmed that he had no health or language issues that could interfere with knowingly and voluntarily pleading guilty. Kim, 71 F.4th at 165 (finding the defendant's healthy state at the Rule 11 hearing relevant in determining whether his sentence should be vacated in light of Ruan); [Dkt. No. 65] at 3-4. The Court informed Bajwa of both the government's burden of proof had the case gone to trial and the elements that the government would have had to prove, including that he "knowingly, intentionally, and unlawfully dispensed or caused to be distributed or dispensed [] in this case, [] [] primarily by writing prescriptions" that were "outside the usual course of professional practice and without a legitimate medical purpose." [Dkt. No. 65] at 25-26. Not only did Bajwa indicate that he understood the elements that the government would have had to prove, but by signing the statement of facts, he confirmed that he "knowingly, intentionally, and unlawfully distributed, dispensed, and caused to be distributed or dispensed" Adderall and oxycodone "outside the usual course of professional practice and without a legitimate medical purpose." Id. at 7-8.

Moreover, Bajwa admitted that he "had not performed the thorough type of medical examination normally required as part of [his] practice," which is in direct violation of 21 C.F.R. § 1306.4(a). Id. at 32. Because "allegations in a § 2255 motion that directly contradict the [movant]'s sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false,'" and because Bajwa's own words under an affirmation to tell the truth, underscore his understanding and admission that the government could have satisfied the mens rea requirement in Ruan, his argument that there was anything in his plea colloquy that caused him actual prejudice fails. U.S. v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005); Kim, 71 F.4th at 165 (finding that "those repeated explanations" from the district

7

court in the plea colloquy, "combined with mens rea allegations contained in the indictment" were sufficient under Ruan).

Second, in the Statement of Facts, reviewed and signed by Bajwa, he agreed that the prescriptions he issued were unauthorized because they "were made for no legitimate medical purpose, and outside the course of ordinary professional practice, within the meaning of 21 U.S.C. § 841(a)(2) and 21 C.F.R. § 1306.4(a)," and that his actions relating to the issuance of the unauthorized prescriptions, "were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason." [Dkt. No. 33] at 9. He also admitted that "had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt." Id. Much like the Rule 11 hearing, the Statement of Facts establishes that Bajwa's actions were knowing and deliberate and leaves no doubt that Bajwa's convictions were consistent with the mens rea requirement of Ruan. See Kim, 71 F.4th at 166 (a court may also rely on the entire record in determining the probability of a different result in light of new law).

Bajwa similarly fails to show that he is actually innocent of the crimes for which he has been found guilty because actual innocence requires "a stronger showing than that needed to establish prejudice." Schlup, 513 U.S. at 327. By both signing the Statement of Facts and confirming that had this case gone to trial, the government could have proven that he knowingly and voluntarily issued unauthorized prescriptions, which is exactly what Ruan requires, Bajwa is "precluded [from asserting] any claims of actual innocence." U.S. v. Dungee, 228 F. App'x 298, 303 (4th Cir. 2007).

Even if Bajwa had not admitted that the government could have satisfied the mens rea requirement under Ruan, "the mountain of circumstantial evidence" in this case leaves little doubt that Bajwa knowingly and voluntarily issued unauthorized prescriptions. Kim, 71 F.4th at 166; see Ruan, 142 S. Ct. at 2382 (explaining that "[t]he Government . . . can prove knowledge

8

of a lack of authorization through circumstantial evidence"). For example, Bajwa continued to prescribe Adderall to the UC-1 even after the officer told him that he shared his prescription pills with his little sister, and Bajwa further told the UC-1 to lie to the pharmacy to get his prescription filled early. [Dkt. No. 33] ¶ 8. Bajwa also prescribed Adderall to another undercover officer (UC-2) "so that she could have more energy to work out and keep up with her young children," which is not a legitimate use for Adderall, and he even doubled her dosage after she told Bajwa that "her workouts were great and she had a lot more energy." Id. ¶ 13. During a subsequent visit, the UC-2 asked for additional pills to give to her non-patient friend to help him with his workouts, and without even meeting the UC-2's friend, Bajwa agreed. Id. ¶ 15.

With regards to the other patients referenced in the six counts for which he admitted guilt, Bajwa agreed that he never conducted any physical examination of the patients before prescribing Adderall. When patient T.O. told Bajwa that he had lost his pills, Bajwa did not question him; instead, he wrote a refill for half the amount of T.O.'s usual prescription. Id. ¶ 19. Similarly, Bajwa prescribed patient M.C. Adderall despite never evaluating or discussing any "history, social or workplace functioning, or history of childhood symptoms of attention disorders" with M.C. Id. ¶ 23. Bajwa prescribed unsafe combinations of drugs to patient C.B., in direct contradiction to FDA and CDC warnings, and issued two prescriptions for 30-day supplies of Adderall within only three weeks of each other. Id. ¶ 27-28. Bajwa never evaluated or documented C.B.'s history, social or workplace function, or symptoms of attention disorders. Id. ¶ 29. Finally, Bajwa continuously prescribed controlled substances, including oxycodone, to patient N.J., despite N.J.'s mother informing Bajwa that N.J. was abusing drugs and using the medication that Bajwa prescribed to get high and despite Bajwa knowing of N.J.'s drug abuse and observing that N.J. had visible track marks on his arms. Id. ¶ 34. When N.J. was admitted to a residential treatment center, Bajwa nevertheless issued N.J. a prescription for controlled

substances. Id. at ¶ 33. N.J. obtained the controlled substances and brought them back to the treatment center, and as a result, he was dismissed from the program. Id. After his dismissal, N.J. was found dead from a drug overdose. Id.

In support of his claim that he subjectively believed the prescriptions he issued were authorized, Bajwa tries to contradict his written and oral admissions by arguing that his patients received thorough examinations before he prescribed them Adderall or oxycodone. Considering the Rule 11 colloquy and stipulated Statement of Facts, his arguments are not credible. [Dkt. No. 76] at 4; Lemaster, 403 F.3d at 221 (explaining that a "defendant's solemn declarations in open court affirming [a plea agreement] . . . 'carry a strong presumption of verity'"). Bajwa already agreed that he did not properly evaluate his patients, and despite Bajwa's contention, there is ample evidence that he knew he was not performing a routine medical function in issuing the relevant prescriptions. [Dkt. No. 76] at 5. Considering the "slim likelihood that a jury would agree that" Bajwa believed that he was writing authorized prescriptions, a more "fulsome explanation of the government's burden to prove mens rea could not have had any effect on [Bajwa's] assessment of his strategic position." Kim, 71 F.4th at 167.

### III. CONCLUSION

Because Bajwa admitted to knowingly and voluntarily issuing unauthorized prescriptions during his Rule 11 hearing and in the stipulated Statement of Facts and because the mountain of circumstantial evidence in this case establishes that he knew that the prescriptions he issued were unauthorized, Bajwa has failed to establish actual prejudice or actual innocence to excuse his procedural default. Accordingly, for the reasons stated above, the Motion to Vacate will be dismissed by an Order to be issued with this Memorandum Opinion.

/s/ 
Leonie M. Brinkema
United States District Judge